## ELLA L. LOBACH, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, June 2, 1913.

1. **NEGLIGENCE: Railroads: Walking on Tracks.** The plaintiff sued to recover damages for the death of her husband, who was fatally injured by the defendants' railroad train. He was walking on the tracks from the Metropolitan Street Railway Crossing in Sheffield south to Fifteenth street. The track between these points is largely used by pedestrians. At the time of the accident the husband, who was intoxicated, stopped to speak with the defendants' watchman and then proceeded south after being warned that he was going the wrong way. A short time later one of the defendants' freight trains approached and the switchman failing to see the plaintiff's husband, gave the signal for a clear track. No one saw the deceased until he was picked up by some cattlemen, who got off the incoming freight, and who found him to be fatally injured. *Held,* that the defendant's demurrer to the evidence should have been sustained, because the plaintiff failed to prove that the defendant was negligent.

2. ———: **Evidence: Burden of Proof.** The burden is always on the plaintiff in a negligence case to prove the negligence pleaded. This burden cannot be discharged by evidence which goes no further than to show the existence of two or more causes of the injury for one of which the defendant would be liable and for the other would not be liable.

3. **EVIDENCE: Circumstantial: Proof of Negligence.** Negligence may be proved by circumstantial evidence and such evidence may be pitted against, and weighed in the balance with opposing evidence of the most direct and positive nature, but where the circumstantial evidence adduced by the plaintiff is just as consistent with the direct evidence of the defendant as with the theory of negligence, an inference of negligence could not be indulged except as the result of mere conjecture or of a selection from two or more equally reasonable conclusions.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

REVERSED AND REMANDED.

*Cyrus Crane* and *George J. Mersereau* for appellant.

(1)   On the entire evidence, plaintiff is not entitled to recover and the humanitarian doctrine is not applicable to this case. Railroad v. Backs, 50 S. E. (Va.) 257; Grout v. Railroad, 125 Mo. App. 526; Wilkinson v. Railroad, 124 S. W. 546; Davis v. Railroad, 134 S. W. 718; Murphy v. Railroad, 228 Mo. 56; Trigg v. Railroad, 215 Mo. 521; Ayres v. Railroad, 190 Mo. 286. (2) The court erred in giving instructions numbered II and III on behalf and in refusing instructions numbered VI, VII and VIII requested by defendant. Frye v. Railroad, 200 Mo. 401, 402.

*A. N. Adams* and *Scarritt, Scarritt, Jones & Miller* for respondent.

(1)   Where one, unconscious of his peril, exposes himself to danger, at a place where those controlling a dangerous instrumentality have no reason to expect a clear track but have reason to expect the presence of persons on the track, then it is their duty to exercise ordinary care to discover him and to prevent injuring him. Werner v. Railroad, 81 Mo. 368; Isabel v. Railroad, 60 Mo. 475; Personal Injuries on Railroad, White 1031, vol. 11, p. 1521; Fearons v. Railroad, 180 Mo. 208; Eppstein v. Railroad, 197 Mo. 720; Everett v. Railroad, 214 Mo. 54; Cole v. Railroad, 121 Mo. App. 612; Rodgers v. Transit Co., 117 Mo. App. 678; Murphy v. Railroad, 228 Mo. 56; Guenther v. Railroad, 108 Mo. 21. (2) The tower man who operated the derailing switch was in control of the train as to that part of the track between the tower and the derailing switch and the defendant is liable for his negligence. Sec. 5425, R. S. 1909; Rinard v. Railroad, 164 Mo. 270; Rine v. Railroad, 100 Mo. 228; Steffe v. Railroad, 156 Mass. 264. (3) There was abundant evidence to submit the case to the jury, and the verdict

was for the right party.  Anderson v. Railroad, 123
N. W. 282, 18 N. D. 462; Blanitt v. Railroad, 72 Mo.
583.

JOHNSON, J.—Plaintiff, the widow of Rudolph
Lobach, deceased, sued to recover damages for the
death of her husband which she alleges was caused by
negligence of defendant.  The cause of action pleaded
in the petition and submitted to the jury is an alleged
breach of the humanitarian rule.  The jury returned
a verdict for plaintiff in the sum of five thousand dol-
lars and, after its motions for a new trial and in ar-
rest of judgment were overruled, defendant appealed.

In the morning of August 16, 1910, at or near four
o'clock, Lobach was run over by a freight train on de-
fendant's railroad and received injuries from which
he died three hours later.  The place of the injury was
near the crossing of defendant's railroad and the tracks
of the Independence line of the Metropolitan Street
Railway Company.  This crossing is in the suburbs of
Kansas City near Sheffield.  The street car tracks run
east and west and the railroad north and south.  A
watchman is maintained by defendant at this crossing
and his station is in a switch tower which is about
thirty feet south of the street car tracks and ten feet
west of defendant's track.  There is a derailing switch
at a point about 400 feet south of the crossing and this
switch is kept open except on occasions when the watch-
man closes it to allow northbound trains to pass over
the crossing.  When a train approaches from the south
and whistles for the crossing the watchman answers
by semaphore signals which are given by moving a
lever in the tower.  If the signal shows a clear cross-
ing the train comes on and the watchman closes the
derailing switch but if the opposite signal is given the
engineer knows that the track is not clear and stops
his locomotive south of the derailing switch which is
left open until the crossing is clear.  About 1600 feet

south of the crossing the railroad crosses a stream and a short distance beyond that, Fifteenth street. There are factories and pleasure resorts along the road and the evidence shows that pedestrians were in the habit of using the railroad between the crossing of the street railway and Fifteenth street in a manner to impose a duty on the operators of trains to be on the lookout for pedestrians at all hours of the day or night. Coming from the south the railroad ran due north to a point about fifty feet north of the derailing switch, thence curved very slightly towards a course a few points west of north.

About an hour before his injury Lobach came to the tower and remained there fifteen or twenty minutes talking to the watchman and another visitor. He was intoxicated but was able to walk and talk coherently. When he left the watchman assisted him down the stairway and tried to induce him to take a street car but he decided to walk home and then started south on the railroad track. The watchman reminded him that he was going the wrong way and he replied that he knew where he was going and kept on southward, disappearing in the darkness. The watchman, having nothing to do at his post for sometime, went to a nearby highway to intercept some farmer going to market with peaches and did not return to the tower until a few minutes before the arrival of a northbound freight train. On reaching his post he looked in the direction Lobach had gone but saw nothing of him. He could not see as far south as the derailing switch until the place came under the glare of the electric headlight of the locomotive. He states he looked along the track then and did not see anyone. He threw the lever to signal for a clear track, closed the derailing switch and the train came on at very slow speed (not over three or four miles per hour), and stopped on the crossing with the caboose standing a short distance south of the switch. Some stockmen alighted from the caboose and the train

went on.  The stockmen while walking along the track towards the crossing discovered Lobach lying between the rails fatally injured.  He was about sixty feet north of the derailing switch and there were marks along the track indicating that he had been rolled and dragged between the rails a distance of, perhaps, thirty feet.  The engineer and firemen, who were introduced as witnesses by defendant, testified that from the bridge north to the crossing, the train had run at three or four miles per hour, that they kept a constant lookout ahead and saw no one on or near the track and did not know until late that afternoon that the train had run over a man.

There is evidence introduced by defendant to the effect that parts of the locomotive were not over four or five inches above the top of the rails and that the ash pan was only six or seven inches above the surface between the rails.  Counsel for defendant argue that the unfortunate man would have been crushed to a shapeless mass had the locomotive passed over him and that he could not have been lying on the track between the rails when the train approached but must have fallen between the cars in some way and been dragged and rolled by some of their low parts.  When found, he was bruised and battered but was not dismembered or much mangled.

The theory of counsel for plaintiff on which they invoke the application of the humanitarian doctrine is that Lobach must have lain down on the track and fallen into a drunken sleep at the place where the marks between the rails show the dragging and rolling of his body began.  They argue that the brilliant headlight carried by the locomotive disclosed the presence of the sleeper in a position of great peril and that the engineer, whose duty required him to be on the lookout for pedestrians at that place, should have discovered the danger in time to have prevented the injury by stopping the train.  It is conceded that at the speed it

was going the train could have been stopped in thirty feet. Further counsel for plaintiff argue that the watchman also was guilty of negligence under the last chance rule in not giving the engineer the signal to stop south of the derailing switch since he knew or should have known that Lobach was on the track in a helpless condition at a place over which he had supreme control.

The assertion of the engineer, fireman and watchman that they carefully looked at the track between the switch and the crossing while it was in the glare of the headlight and saw no one there is positive, but not conclusive, evidence that Lobach was not lying asleep in that portion of the track. If we should find such assertion to be opposed to physical facts and circumstances in evidence we would hold that an issue of fact was raised for the jury to determine and, on the hypothesis that Lobach was then in an obvious position of danger, we would say, as did the trial court, that the evidence of plaintiff accuses the enginemen and watchman of a negligent breach of the respective duties they owed Lobach under the humanitarian rule. If the engineer looked ahead, as he says he did, he could not have failed to see the danger and his failure to stop the train could not be regarded otherwise than as negligence so gross as to amount to a willful and wanton disregard of the most sacred of human rights. The same may be said of the conduct of the watchman. He was a servant of defendant engaged in the operation of the train within the meaning of section 5425, Revised Statutes 1909. He was in control of that part of the track and the train could not come upon it without his consent and active co-operation. As is said by the Supreme Judicial Court of Massachusetts in Steffe v. Railroad, 156 Mass. 262, 30 N. E. 1137, in construing a similar statute:

"One who is to determine whether the train is to move or remain stationary, and who is to give direc-

tions as to the moving or stopping of the train, may be said to be in the charge or control of it.''

The watchman's prime duty was to see that the track was clear before letting a train pass the switch and in the performance of that duty he was as much bound to look along the track to the switch as he was to see that the street railway crossing on the other side of the tower was clear. We do not agree with counsel for plaintiff that in view of the intoxication of Lobach the watchman was bound to leave the tower and go as far as the switch to ascertain what had become of him, but we do say that in view of the fact that the railroad had been turned into a passageway for pedestrians he was bound to know that the track under his direct control was clear from one end to the other before he let in a train.

But the vital weakness of plaintiff's case lies in her complete failure to satisfy the well-settled rule that imposes on the plaintiff in a negligence case the burden of proving the pleaded negligence. This burden cannot be discharged by evidence which goes no further than to show the existence of two or more causes of the injury for one of which the defendant would be liable and for the other would not be liable. Of course negligence may be proved by circumstantial evidence and such evidence may be pitted against, and weighed in the balance with, opposing evidence of the most direct and positive nature, but where the circumstantial evidence adduced by the plaintiff is just as consistent with the direct evidence of the defendant as with the theory of negligence, an inference of negligence could not be indulged except as the result of mere conjecture or of a selection from two or more equally reasonable conclusions.

A plaintiff cannot be suffered to leave the jury in the realm of guess and speculation or to compel them to choose between two or more equally proved causes of the injury for only one of which the defendant would

be liable. The facts and circumstances in proof are just as consistent with the evidence of the enginemen and watchman as with the theory of the injury advanced by plaintiff. There is no proof that Lobach was lying or standing on the track just north of the switch when the train approached. He had been gone from the tower more than half an hour and no one knows where he went. The train was running so slowly that he might have attempted to board it anywhere from Fifteenth street on north to the switch. It would be just as consistent with the physical facts disclosed to infer that he was trying to board the train and fell between cars at the place where he was dragged and rolled as to infer that he was lying asleep on the track in front of the train and in plain view of the engineer, fireman and watchman. There is no evidence that he drank any intoxicants in the tower or carried intoxicating liquor on his person and he seemed to know what he was doing and to be able to go where he pleased. He wandered off in a direction away from his home and it is just as reasonable to think he acted on an impulse to ride back to the crossing and then go home on a street car as to think that he fell asleep on the track. It is useless to go further in the field of conjecture. When we follow the lead of plaintiff and reject the direct testimony of the operators of the train the remaining evidence presents the question of the cause of the injury as one wholly unsolved and left in doubt and speculation. The trial court erred in not sustaining the demurrer to the evidence. The judgment is reversed and the cause remanded. All concur.